IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STRATEGIC GROUP EQUITIES, INC., an
Oregon corporation, WILLIAM MEYER, and
SUSAN MEYER,

      Plaintiffs,

  v.

HARDHATBID, INC. a California corporation,

      Defendant.

No. CV 06-1051-MO

OPINION AND ORDER

**MOSMAN, J.,**

      On September 4, 2007, Plaintiffs Strategic Group Equities, Inc. ("Strategic"), William Meyer, and Susan Meyer (collectively "Plaintiffs") brought an action in diversity against Defendant Hardhatbid, Inc., ("Hardhat") for breach of contract and breach of note. Pls.' First Am. Compl. (#49). On November 5, 2007, Plaintiffs filed for summary judgment against both claims. Because genuine issues of material fact exist as to both claims, I DENY Plaintiffs' Motion for Summary Judgment (#56).

## BACKGROUND

      In June 2002, Strategic and Hardhat entered into a Merger and Acquisition Agreement

PAGE 1 - OPINION AND ORDER

("M&A") and a related Capital Formation Agreement ("CFA").  Under the CFA, Strategic agreed to advise and assist Hardhat in raising capital.  During the fall of 2003, a dispute arose regarding Strategic's compensation under the CFA and Mr. Meyer, Strategic's president, demanded payment from Hardhat for fees and warrants.

On December 23, 2003, Hardhat's Board of Directors met to vote on the requests for payment.  On the same day, Mr. Meyer agreed to loan Hardhat $75,000.  Supp. Decl. of William Meyer Ex. 7 at 2 (#91).  Then, on December 24, 2003, Hardhat sent a letter to Strategic regarding payment, including payment for creating a collateralization fund.  Decl. of Sue-Del McCulloch Ex. 4 (#73).  The letter did not mention Mr. Meyer's $75,000 loan, but an attached fee schedule listed *a* loan for $75,000.  *Id.*

In January 2004, Strategic sent a letter to Hardhat proposing a compensation arrangement for the collateralization fund.  Decl. of John Parks Ex. B (#74).  Susan Meyer invested $200,000 in this fund.  In an April 2004 letter, Strategic and Hardhat agreed to the compensation arrangement for the collateralization fund proposed in the January letter.  Decl. of John Parks ¶9.  Then, in May 2004, Strategic converted the collateralization fund into financing for Hardhat; Susan Meyer's $200,000 investment was thus converted into a loan to Hardhat.  On May 24, 2004, Strategic sent another letter to Hardhat regarding outstanding fees, including fees owed pursuant to the April 2004 letter, which was agreed to by Hardhat.

## DISCUSSION

**I.    Standard of Review**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court views the record in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  If the moving party initially shows that no genuine issue of fact exists for trial, the non-moving party cannot then rest on the pleadings but must respond with evidence

setting out "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted).

## II.     Plaintiffs' Claim for Breach of Contract

First, Plaintiffs seek summary judgment for breach of contract. Plaintiffs argue that the December 24, 2003, letter formed the foundation of a settlement agreement, which Hardhat subsequently breached. Pls.' Mem. Supp. Summ. J. 3 (#57). Hardhat opposes summary judgment arguing that there is no settlement agreement because either: (1) the December letter was not an offer to settle; or, alternatively, (2) the December letter was an offer that neither Strategic nor Mr. Meyer accepted. Def's. Resp. Summ. J. 6-7 (#72). Accordingly, before Plaintiffs may recover for breach of contract they must prove that there was a settlement agreement.

Under Oregon law, a settlement agreement is a contract, *In re Marriage of Baldwin*, 168 P.3d 1233, 1235 (Or. Ct. App. 2007), and the court determines whether a contract exists. *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 120 P.3d 6, 11 (Or. Ct. App. 2005). To determine whether a contract exists and what its terms are, the court "examine[s] the parties' objective manifestations of intent, as evidenced by their communications and acts." *Id.* The parties must manifest mutual assent to form a contract. *Id.* Mutual assent may be "expressed through an offer and an acceptance or . . . manifested by conduct." *Citibank S. Dakota N.A. v. Santoro*, 150 P.3d 429, 432 (Or. Ct. App. 2006) (internal quotation marks omitted) (*quoting Bennett v. Farmers Ins. Co. of Or.*, 26 P.3d 785, 795 (Or. 2001)).

Plaintiffs argue that the December letter was an offer to form a settlement agreement that superseded the CFA and M&A. Pls.' Mem. Supp. Summ. J. 3. I do not address whether it actually constituted an offer. Assuming, that the December letter was offer, Plaintiffs had to

PAGE 3 - OPINION AND ORDER

---

accept that offer to form a contract. *See Ken Hood*, 120 P.3d at 11. To be valid, the acceptance "must be positive, unconditional, unequivocal, and unambiguous, and must not change, add to or qualify the terms of the offer." *Painter v. Huke*, 862 P.2d 566, 568 (Or. Ct. App. 1994) (internal quotation marks omitted) (quoting *C.R. Shaw Wholesale Co. v. Hackbarth*, 201 P. 1066, 1067 (1921)).

A party's conduct may constitute acceptance of an offer despite the absence of a signed writing. *Santoro*, 150 P.3d at 432. In *Santoro*, a credit card company sued the defendant for breach of contract. *Id.* at 430. The defendant argued that he did not have a binding contract with the company because there was no signed writing. *Id.* The court disagreed, reasoning that the defendant accepted an offer to contract with company when he "received the credit card at his request," did not "cancel the credit card account," and "used the credit card." *Id.* at 432. The court concluded that the defendant's "conduct constituted an acceptance of the agreement." *Id.* Thus, a contract was formed without a signed writing. *See id.*

Here, Plaintiffs argue that they accepted the December letter offer when Mr. Meyer loaned Hardhat $75,000 because the offer was conditioned on the loan. Pls.' Mem. Supp. Summ. J. 3. Under Oregon law, Plaintiffs could have accepted the December offer through conduct when Mr. Meyer loaned Hardhat $75,000. *See Santoro*, 150 P.3d at 432. But Hardhat argues that the loan is an unrelated, separate transaction that does not constitute acceptance. *See* Def's. Resp. Summ. J. 11. Indeed, Mr. Parks states in his declaration that "the loan was not made a part of the terms of the December 24, 2003 letter," despite the timing of the loan and Hardhat's Board of Directors conditioning the December letter offer on *a* loan. Decl. of John Parks ¶7.

Assuming the facts in the light most favorable to Hardhat, a genuine issue of material fact exists regarding whether the loan is related to the December letter offer. This issue of fact must be resolved before I can determine whether the loan constituted acceptance to the letter offer. In addition, without determining whether a settlement agreement existed, I cannot resolve the other

issues created by the January, April and May letters. Thus, this dispute of fact, although weak, is sufficient to create a genuine issue of material fact making summary judgment inappropriate.

### III.    Plaintiffs' Claim for Breach of Note

Plaintiffs' also seek summary judgment on Hardhat's breach of Susan Meyer's note. Hardhat admitted that Susan Meyer loaned it $200,000. Decl. of Michelle Holman Kerin Ex. 3 at 1-2 (#60). However, Hardhat and Plaintiffs dispute the due date of the note. Plaintiffs have produced a promissory note signed only by Ms. Meyer with a due date 180 days after the loan was made. Plaintiffs argue that the loan is due because more than 180 days have passed. Pls.' Mem. Supp. Summ. J. 5. Conversely, Hardhat argues that the note is not yet due because the loan is on the same terms as the other investors. Def's. Resp. Summ. J. 19. The other investors in Susan Meyer's position agreed to defer repayment on their loans until Hardhat closed a $5,000,000 contract or raised $5,000,000. *Id.* Hardhat has not yet raised this money. *Id.* Consequently, Hardhat argues that it does not yet have to repay any lenders, including Ms. Meyer. *Id.* Moreover, Hardhat disputes ever agreeing to the 180 day term. *Id.* at 19-20.

Thus, there a two issues of material fact: (1) whether Ms. Meyer's loan is now on the same terms as the other investors; and (2) whether Hardhat ever agreed to the 180 day term of the note. Because both disputes leave the due date of the loan uncertain, there are genuine issues of material fact regarding whether Hardhat breached the note at all. Therefore, summary judgment is inappropriate on Plaintiffs' breach of note claim.

## MOTIONS TO STRIKE

On December 12, 2007, Hardhat filed a motion to strike portions of Plaintiff's evidence. Def's. Mot. to Strike (#68). On January 7, 2008, Plaintiffs filed a motion to strike portions of Hardhat's evidence. Pls.' Mot. to Strike Def's. Evid. (#86). Because these motions to strike were not relevant to my analysis, I DISMISS them as moot.

## CONCLUSION

Summary judgment is inappropriate because there are genuine issues of fact regarding formation of the settlement agreement and the due date of the note. Consequently, I DENY Plaintiffs' Motion for Summary Judgment (#56). Moreover, I DISMISS Defendant's Motion to Strike (#68) and Plaintiffs' Motion to Strike Defendant's Evidence (#86) as moot.

IT IS SO ORDERED.

DATED this  8th  day of April, 2008.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court